UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | Case No. 1:16-cr-8 |
| v. ) | |
| ) | Judge McDonough/Steger |
| CHARLES MANDEL MOSS ) | |

**REPORT AND RECOMMENDATION**

This matter came before the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and (C) to conduct such evidentiary hearings as deemed necessary and to issue a report and recommendation on Defendant's Motions for Competency Hearing [Docs. 22, 36]. The Court notes that, when the question of competency is raised, the government has the burden of proving competency by a preponderance of the evidence. *United States v. Teague*, 956 F.2d 1427, 1431 n.10 (7th Cir. 1992); *United States v. Frank*, 956 F.2d 872, 875 (9th Cir. 1991); *United States v. Velazquez*, 885 F.2d 1076, 1089 (3rd Cir. 1989); *Lowenfield v. Phelps*, 817 F.2d 285, 294 (5th Cir. 1987), *aff'd*, 484 U.S. 231 (1988).

**1. Procedural Background.**

By way of background, Defendant filed a Motion for Pretrial Psychiatric and/or Psychological Examination on March 22, 2016, seeking an evaluation pursuant to 18 U.S.C. §§ 4241 and 4247 to determine if Defendant is mentally competent to stand trial or enter a plea [Doc. 13]. The undersigned conducted a hearing on April 4, 2016, and entered an Order of Commitment for Mental Evaluation on April 7, 2016 [Doc. 17].

Defendant was delivered to the Federal Medical Center in Lexington, Kentucky, on May 24, 2016 [Doc. 18], where a mental health evaluation was completed pursuant to 18 U.S.C. §§

1

4241 and 4247.  Defendant was evaluated by Dr. Betsy Campbell, a forensic psychologist.  She was assisted by Ashley Jenkins, a forensic psychology intern.  The sealed mental health report was filed on July 19, 2016 [Doc. 21].  The report details the history taken from Defendant, prior mental health records pertaining to Defendant reviewed by the evaluators, tests administered to Defendant, and specific findings concerning Defendant's mental condition and cognitive ability.

As a part of the evaluation, Dr. Campbell had access to Defendant's prior mental health records.  These records included treatment administered to Defendant during six different hospital stays at Moccasin Bend Mental Health Institute during 2001, 2003, 2007, 2008 and 2010.  Dr. Campbell also reviewed records received from Volunteer Behavioral Health Care System/Joe Johnson Mental Health reflecting outpatient treatment rendered to Defendant from 2013 to 2015.  Finally, Dr. Campbell reviewed records reflecting psychiatric treatment rendered to Defendant during a period of hospitalization in 2012 at the Tennessee Department of Corrections Deberry Special Needs Unit.

Following Defendant's period of evaluation at the Federal Medical Center in Lexington, Kentucky, Dr. Campbell and Ms. Jenkins determined that he was competent to stand trial, concluding in their report:

> In summary, a finding of competency to stand trial requires the defendant to have a factual and rational understanding of the proceedings against him and sufficient ability to consult with his attorney with a reasonable degree of rational understanding.  Mr. Moss displayed a basic concrete understanding of the proceedings against him and demonstrated sufficient present ability to consult with his attorney regarding the charges against him.  Therefore, based on the available information, in the opinion of the undersigned evaluators, if provided with the above listed accommodations, Mr. Moss is not currently suffering from a mental disease or defect rendering him mentally incompetent to the extent he is unable to understand the nature and consequences of the proceedings against him or properly assist in his defense.  Thus, in the opinion of the examiner, Mr. Moss is currently competent to stand trial.

2

[Doc. 22, p. 13].

After his release from the Federal Medical Center in Lexington, Defendant's counsel filed a Motion for Competency Hearing [Doc. 22] on July 25, 2016. There ensued requests from counsel for both parties to delay proceedings for valid reasons. Defendant's counsel eventually filed a second Motion for Competency Hearing [Doc. 36] on January 19, 2017. A hearing was held before the undersigned Magistrate Judge on Defendant's motion on February 6, 2017 [Doc. 40]. Present for the hearing were AUSA Jay Woods, Federal Defender Gianna Maio, and Defendant Charles Mandel Moss.

Dr. Betsy Campbell testified on behalf of the government. Dr. Katie Smith testified on behalf of the Defendant. During the course of the hearing, Dr. Campbell testified that she reviewed and, to some extent, relied upon records from the Tennessee Department of Corrections Deberry Special Needs Unit where Defendant was hospitalized in 2012. Those records had not been made available to the parties or the Court. Consequently, an Order for Release of Medical Records was entered on February 8, 2017 [Doc. 41] authorizing Dr. Campbell to release copies of mental health records from the Deberry Special Needs Unit to the Court and the parties. Those records were received by the Court on Friday, March 10, 2017.

**2. Findings from Mental Competency Hearing.**

As is reflected in Dr. Campbell's Forensic Report [Doc. 21], Defendant suffers from longstanding, persistent, paranoid delusions. As is noted in the report [Doc. 21, pp. 4, 5]:

> Records received from Moccasin Bend Mental Health Institute reflect Mr. Moss received treatment in 2001, in 2003, 2007, 2008, and in 2010. Documentation indicates Mr. Moss was first seen in March of 2001, when he was committed under emergency involuntary status for nine days after he was released from a seven year prison sentence. It was noted Mr. Moss was homeless and living

3

primarily in a car at the time. Records indicate he reported the belief "they placed a microchip in his eyes and stomach" while he was in prison. He reportedly also expressed the beliefs "his girlfriend was trying to poison him," "the Mafia and FBI" were after him, and "things were put in his food which caused his penis to shrink and his testicles to be become swollen and hard." Documentation also reflects Mr. Moss reported an olfactory hallucination consisting of the ability to smell a colostomy bag he believed was attached to his ear.

. . . .

Available records indicate Mr. Moss was referred to Moccasin Bend Mental Health Institute by a social worker from Fortwood Adult Services in March of 2003. Documentation indicates Mr. Moss was experiencing auditory hallucinations (telling him to kill himself and others), and he acknowledged a plan to shoot himself with his father's gun or stab himself. He also reported he was experiencing visual hallucinations (people coming out of the walls), homicidal thoughts (he had a plan to burn down his girlfriend's house), believed he had a snake living in his stomach, and the jail was poisoning him.

. . . .

According to available records, Mr. Moss [sic] sixth and final admission to Moccasin Bend Mental Health Institute was for three days in 2010. Documentation reflects Mr. Moss "was agitated, thinking that they planted a GPS chips [sic] in his eyes. He reportedly thought that the police were going to kill him."

. . . .

Records received from Volunteer Behavioral Health Care System/Joe Johnson Mental Health reflect Mr. Moss received outpatient treatment at the facility from 2013 – 2015. According to the records, Mr. Moss was first seen in June of 2013, for complaints regarding side effects he attributed to prescribed Haldol.[1] The prior diagnoses of Schizophrenia, Paranoid type and Antisocial Personality Disorder from Moccasin Bend were maintained in the documentation.

Ultimately, Dr. Campbell concluded in her report and testified at the hearing that Defendant had "Antisocial Personality Disorder with paranoid features" and "Mild Intellectual Disability" (the Wechsler Adult Intelligence Scale test administered to him reflected an "overall full-scale IQ of 63 which is considered to be in the Extremely Low range of intellectual

---

[1] Haldol is a drug commonly administered to treat Schizophrenia.

4

functioning) [Doc. 21, p. 7].

The undersigned notes that the conclusions reached by Dr. Campbell are somewhat inconsistent with certain observations in her report wherein she states:

> As noted throughout Mr. Moss [sic] medical records and collateral documentation, he also consistently expressed paranoid thinking regarding beliefs others were out to kill him and beliefs a GPS chip had been implanted in his eyes. During the present evaluation, he consistently expressed the belief his food was being poisoned by the correctional officers.

[Doc. 21, p. 10]

By way of explanation for this apparent inconsistency, Dr. Campbell stated in her report that Defendant could control his presentation to avoid expression of these paranoid delusions when "he was provided feedback [that] his verbal style was making him appear acutely mentally ill." [Doc. 21, p. 10]. She also offered that his psychotic symptoms (e.g., hallucinations, paranoid delusions, etc.) could be caused by substance abuse rather than mental illness [Doc. 21, p. 11].

At the competency hearing on February 6, 2017, Dr. Campbell testified on direct examination in a manner consistent with her findings in her Forensic Report [Doc. 21], concluding that Mr. Moss has Antisocial Personality Disorder and Mild Intellectual Disability, but that he is mentally competent to stand trial. Upon cross-examination by defense counsel and questioning by the Court, Dr. Campbell conceded that Mr. Moss has been diagnosed with schizophrenia at Moccasin Bend Mental Health Institute, Volunteer Behavioral Health Care System/Joe Johnson Mental Health, and the Tennessee Department of Corrections Deberry Special Needs Unit. So, at essentially all of the psychiatric hospitals at which Defendant has undergone periods of treatment, he has been diagnosed at one point or another as being a

5

Case 1:16-cr-00008-TRM-CHS   Document 42   Filed 03/21/17   Page 5 of 9   PageID #: 103

paranoid schizophrenic and has been administered drugs designed to treat a serious mental illness. Upon the Court's questioning, Dr. Campbell also conceded that Defendant may currently have paranoid schizophrenia.

The defense called as a witness Dr. Katie Smith, a psychologist who was hired to perform an independent evaluation of Defendant. Dr. Smith was unable to evaluate Defendant because he refused to cooperate or engage in meaningful conversation with her.

The Court notes that Defendant's counsel, Gianna Maio, has faced the same problem. In Defendant's "Sealed Motion to Continue Competency Hearing and Request for Status Conference" [Doc. 32], Attorney Maio made the following observations:

> On September 7, undersigned counsel attempted to meet with Mr. Moss at CCA Silverdale but he was never brought out of segregation. Between September 8 and September 30, Mr. Moss left 10 voicemails for undersigned counsel. On September 8, Mr. Moss left a voicemail to say that he did not come out of his cell for undersigned counsel's attempted visit the day before because "those white boys tried to cuff me behind my back." Mr. Moss said "they are trying to murder somebody out here."
>
> One message in particular was disturbing. In it, Mr. Moss said that it is "hard to believe that a woman like you with the career that you have would put all of that on the line to try to help these people sneak me out of here and try to murder me." He went on to say that undersigned counsel knew they were trying to murder him when counsel sent him for the evaluation. Mr. Moss reiterated that the staff at the Federal Medical Center in Lexington was trying to poison him for the entire two months he was there. Mr. Moss said that he "knows these people are watching you (referring to undersigned counsel) and are trying to see how far you are going to go with this." Mr. Moss left a voicemail earlier that day informing undersigned counsel that they are trying to poison his food at CCA and murder him.
>
> On September 22, undersigned counsel arranged to have Dr. Katie Smith travel from Knoxville to evaluate Mr. Moss at CCA. While at CCA Silverdale, Dr. Smith was able to have a brief conversation with Dr. Mauldin, the staff psychologist at CCA. Dr. Mauldin confirmed to Dr. Smith that Mr. Moss expressed paranoid thoughts regularly with all members of CCA staff. According to Ms. Montgomery, another CCA staff member, Mr. Moss posted a sign in his cell door window that says, "White people are poisoning my food."

. . . .

On October 3, Mr. Stephen Turman, an investigator with Federal Defender Services of Eastern Tennessee, attempted to meet with Mr. Moss. Mr. Turman was unable to obtain records from Mr. Moss's stay at the TDOC Lois M. DeBerry Special Needs Facility without getting his signature on a TDOC medical release form. According to Mr. Turman, Mr. Moss said that undersigned counsel has all of his mental health records and he refused to sign additional releases. Mr. Moss told Mr. Turman to convey the message that he no longer wants undersigned counsel to work on his case, and expressed a belief that undersigned counsel is trying to kill him.

On October 18, undersigned counsel attempted to meet with Mr. Moss. After waiting for approximately 45 minutes, he was never brought out from segregation for the visit. On October 28, undersigned counsel again attempted to meet with Mr. Moss. Prior to this last attempt, undersigned counsel contacted the CCA Silverdale warden, Mr. Christopher Howard, as well as Deputy United States Marshal John Bieber, to inform them about her attempted visit with Mr. Moss. Mr. Howard asked that undersigned counsel notify him in advance of a planned visit with Mr. Moss. Undersigned counsel notified Mr. Howard regarding her request for a visit on October 28, and the warden said that he would see to it that he had the staff on hand to have Mr. Moss brought out for an attorney visit that day. As soon as undersigned counsel arrived at the facility, she heard over the radio at the front desk that Mr. Moss was refusing the attorney visit.

. . . .

Mr. Moss has been expressing paranoid ideations for the entire time that undersigned counsel has represented him. Some of those paranoid ideations are directed at counsel. Therefore, Mr. Moss's mental illness is directly impacting his ability to work with counsel and assist in his defense. There have been two attorney-client meetings during which counsel has attempted to discuss with Mr. Moss the charges against him, the sentencing guidelines, potential motions, and other case-related topics. Although Mr. Moss can follow along for a brief time period, he gets easily off-track in expressing paranoid thoughts and cannot maintain his focus on any one topic for more than a couple of minutes. He has not expressed any real capability to weigh the pros and cons of several options and make important decisions concerning his case.

During the mental competency hearing, Defendant presented as extremely agitated. He shifted in his seat nervously and commented repeatedly that he "just wanted his time." It is clear

7

to the undersigned that Defendant is not feigning mental illness in order to avoid a trial or a conviction. To the contrary, Defendant does not wish to be treated for mental illness. He wants only to receive his sentence and serve his time.

   **3. Conclusion.**

Based on the totality of the record, it is impossible to conclude that Defendant is currently capable of working collaboratively with his attorney (or, for that matter, any attorney) in preparing his defense. His paranoid ideations prevent him from trusting or assisting his attorney. Indeed, he possesses a firmly held conviction that his attorney is attempting to "kill him."

For the foregoing reasons, pursuant to 18 U.S.C. § 4241(d), it is RECOMMENDED[2] that the Court find, by a preponderance of the evidence:

1. Defendant is presently suffering from a mental disease or defect rendering him mentally incompetent to the extent that he is unable to assist properly in his defense; and

2. Defendant should be committed to the custody of the Attorney General for such a period of time, not to exceed four months, as is necessary to determine whether there is a substantial probability that in the foreseeable future he will attain the capacity to permit the proceedings to go forward; and for an additional reasonable period of time until his mental condition is so improved that trial may proceed, if there is a substantial probability that within such additional period of time he will attain the capacity to permit the proceedings to go forward or the pending charges are disposed of according to law, whichever is earlier.

---

[2] Any objections to this Report and Recommendation must be served and filed within fourteen (14) days after service of a copy of this recommended disposition on the objecting party. Such objections must conform to the requirements of Rule 59(b)(2) of the Federal Rules of Criminal Procedure. Failure to file objections within the time specified waives the right to appeal the District Courts order. *Thomas v. Arn*, 474 U.S. 140, 88 L.Ed.2d 435, 106 S. Ct. 466 (1985). The district court need not provide *de novo* review where objections to this report and recommendation are frivolous, conclusive or general. *Mira v. Marshall*, 806 F.2d 636 (6th Cir. 1986). Only specific objections are reserved for appellate review. *Smith v. Detroit Federation of Teachers*, 829 F.2d 1370 (6th Cir. 1987).

**ENTER.**

s/ *Christopher H. Steger*
United States Magistrate Judge

9